**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **LOUIS CORRADI,** | **Civil Action No. 16-5076 (FLW)** |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **NEW JERSEY STATE PAROLE BOARD et al.,** | |
| **Defendants.** | |

**FREDA L. WOLFSON, CHIEF JUDGE**

     This matter has been opened to the Court by Sgt. Kimberly Cavanaugh ("Sgt. Cavanaugh") and Officer Michelle Rey's ("Officer Rey") (collectively "Defendants") motion for summary judgment on Plaintiff Louis Corradi's ("Plaintiff" or "Corradi") Fourth Amendment claims under 42 U.S.C. § 1983 in connection with the search of his residence and vehicle and his subsequent arrest on April 1, 2015. For the reasons stated below, the Court finds that the Defendants, who were Plaintiff's parole officers, are protected by qualified immunity with respect to Plaintiff's Fourth Amendment illegal search claims. Plaintiff's remaining Fourth Amendment claims for false arrest and/or imprisonment also fail because the record establishes that Defendants had probable cause to arrest him. The Court will therefore grant Defendants' motion for summary judgment as to the Fourth Amendment claims and direct the Magistrate Judge to hold a phone conference regarding Plaintiff's remaining due process claim(s).[1]

---

[1] This claim is alleged in the Complaint but the Court did not construe it in the initial screening Opinion, and Defendants have not moved for summary judgment on this claim.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### a.  Factual Background

In 1999, Louis Corradi, a self-described computer expert, was arrested and charged with possession of child pornography, which resulted from the discovery of child pornography images on Corradi's home and work computers.  SOMF at ¶ 1, Exhibit A at 5:20-6:16; *see also* Exhibit D.[2]  Plaintiff was convicted of the child pornography charges and sentenced to 30 months in federal prison, followed by three years of probation.  SOMF at ¶ 2, Exhibit A at 22:12-23:1.  In 2008, while serving federal probation, Corradi was convicted by the State of New Jersey of Endangering the Welfare of a Child resulting from his sexual abuse of a five-year-old girl.  SOMF at ¶ 3,  Exhibit A, 6:17-7:12; Exhibit D, SPB142.  Plaintiff was sentenced on the New Jersey conviction to a term of incarceration and to Parole Supervision for Life ("PSL") under "Megan's Law," N.J.S.A. 2C:43-6.4.  SOMF at ¶ 4, Exhibit A, 6:17-7:12; Exhibit D, SPB142.

In 2011, Plaintiff was released from incarceration and began serving his PSL term.  SOMF at ¶ 5, Exhibit A, 6:17- 7:12; Exhibit D, SPB142.  Offenders serving a PSL term are supervised by the New Jersey State Parole Board ("the Board"), and are subject to general conditions, required by statute, and special conditions, imposed by the Board on a case-by-case basis.  SOMF at ¶ 6, Exhibit B, SPB21-23; Exhibit D, SPB137-145.

Upon Plaintiff's release from custody, the Board served him with written notice of the PSL general and special conditions of supervision.  SOMF at ¶ 7, Exhibit B, SPB21-23; Exhibit D, SPB137-145.  The Board required Corradi to refrain from the possession and/or utilization of

---

[2] Unless otherwise noted, all exhibits are attached to the Declaration of Christopher C. Josephson, hereinafter "Josephson Decl."

any computer and/or device that permits access to the Internet unless authorized by the District Parole Supervisor.  SOMF at ¶ 8, Exhibit D, SPB144-145.

On October 10, 2013, a Board panel found that Corradi violated the PSL conditions requiring him to refrain from using any computer to engage in social networking, to refrain from the purchase, possession, or use of alcohol, and to refrain from the possession or use of computer or device that permits access to the Internet without prior authorization.  SOMF at ¶ 9, Exhibit B, SPB21-46.  As a result, the Board panel revoked Corradi's PSL term and ordered him to serve a 14-month future eligibility term ("FET").  SOMF at ¶ 10, Exhibit B, SPB24.  On November 30, 2014, Plaintiff was released from custody after serving the 14-month FET on the 2013 PSL violation, and resumed serving his PSL term.  SOMF at ¶ 11, Exhibit C, SP52.

On December 16, 2014, the Board again served Plaintiff with written notice of the PSL conditions of supervision.  SOMF at ¶ 12, Exhibit D, SPB137-140.  On the same date, the Board served Corradi with Notice of Imposition of Special Conditions, including the following: to refrain from the possession and/or utilization of any computer and/or device that permits access to the Internet unless authorized by the District Parole Supervisor; and to refrain from purchasing, viewing, downloading, possessing and/or creating pornography.  SOMF at ¶ 13, Exhibit D, SPB142-145.

On February 10, 2015, the Board imposed a special condition on Corradi, requiring him to refrain from the possession of any Emergency Medical Services (EMS), Emergency Medical Technician (EMT), Fireman, First Responder or Law Enforcement Paraphernalia.  SOMF at ¶ 14, Exhibit D, SPB141.

On March 9, 2015, South Plainfield police responded to the residence of Joanne Juba ('Juba') on a report of suspicious activity on a laptop computer.  SOMF at ¶15, Exhibit E,

SPB62.  Upon arrival at the Juba residence, police spoke with Joanne Juba, who stated that she had been having problems with her laptop computer, including issues with logging on.  *See* SOMF at ¶ 16, Exhibit E, SPB62-63.  "Juba stated she looked into the computer's history and noticed the following notification[:] 'unauthorized user logged on...' Juba at this time could not provide specific dates[;] however the name Louis was attached to the notifications[.]"  *Id.* SOMF at ¶ 17, Exhibit E, SPB63.

Juba told police that she suspected that Louis Corradi, whom she knew through her friendship with Corradi's mother, had attempted to access her computer as he had worked on her family member's computer in the past.  SOMF at ¶ 18, Exhibit E, SPB63.  Juba also told police that she wanted to document this incident involving unauthorized access of her laptop computer because she did not want anyone to think she had permitted Louis Corradi to use her computer. SOMF at ¶ 19, Exhibit E, SPB63.

On March 23, 2015, South Plainfield police contacted Juba by phone to obtain additional information.  SOMF at ¶ 20, Exhibit E, SPB64-65.  On that date, Juba told the South Plainfield Police that approximately nine years earlier, she hired Louis Corradi to fix her daughter's computer based upon a recommendation from Louis Corradi's mother.  SOMF at ¶ 21, Exhibit E, SPB65.  Juba also told South Plainfield Police that sometime in early March of 2015, she logged on to her computer, observed a computer file, which indicated an "unauthorized user," and observed the name "Louis" in her computer history.  SOMF at ¶ 22, Exhibit E, SPB65.

On March 25, 2015, the South Plainfield Police provided its report related to the incident involving Joanne Juba's computer to Sgt. Kimberly Cavanaugh.  SOMF at ¶ 23, Exhibit F, SPB129.  In her report dated March 31, 2015, Sgt. Cavanaugh noted that the South Plainfield Police were not proceeding with further investigation of the incident at that time.  *See* Exhibit F,

SPB130. Nevertheless, Sgt. Cavanaugh and Corradi's Parole Officer Michelle Rey reviewed Corradi's case in light of the information received from the South Plainfield Police regarding the incident involving Joanne Juba's computer. SOMF at ¶ 24, Exhibit F, SPB130. Sgt Cavanaugh stated in the report that there was a reasonable, articulable suspicion to believe that Louis Corradi had remotely accessed Joanne Juba's computer based upon the following facts: that Joanne Juba and Corradi's mother were friends; that Corradi worked on Juba's computer "several years ago" after a recommendation by Corradi's mother; that Juba told police that the name "Louis" appeared on her computer as an unauthorized user approximately three weeks earlier; that Corradi has extensive computer knowledge and experience; that Corradi had violated his PSL status in 2013 for possessing and utilizing an Internet-capable device; and that Corradi has a federal conviction for downloading child pornography. SOMF at ¶ 25, Exhibit E, SPB62-65; Exhibit F, SPB130, SPB138, SPB144-45.

In his deposition, Plaintiff testified that he worked on Juba's computer "at least" 10 years prior to the incident reported by Juba, and he denied accessing Juba's computer in March 2015 or anytime thereafter. *See* Exhibit A at 13:1-14. Plaintiff further contends that he did not know where Juba lived and had not had contact with her for over ten years. ECF No. 75-1, Opposition Brief at 1.

The record contains a document entitled "Notice of Probable Cause Hearing," dated April 1, 2015, which indicates that Sgt. Cavanaugh approved the search of Plaintiff's vehicle and home. *See* Exhibit F, SBP105. On April 1, 2015, Sgt. Cavanaugh and Officer Rey searched Corradi's vehicle and discovered a "police scanner radio trans receiver IC-2800" installed in the dashboard. SOMF at ¶ 26, Exhibit F, SPB103, SPB110, SPB126, SPB132. On April 1, 2015, Cavanaugh, Rey, and additional Parole officers, as well as officers from the South Plainfield

Police Department, proceeded to Corradi's residence to conduct a search of the residence. SOMF at ¶ 27, Exhibit F, SPB131; Exhibit A at 11:4-9.  It appears undisputed that Plaintiff lived at the residence, which was owned by his mother, who was not present on April 1, 2015.  *See* Plaintiff's Opposition Brief at 1.

During the search of the residence on April 1, 2015, officers found the following items: a .22-caliber rifle in the basement, beer cans in the recycling bin and in Corradi's bedroom, EMT paraphernalia in Corradi's bedroom and in a spare bedroom, an LG Smartphone package, and a Walmart receipt for an LG smartphone, dated March 4, 2015, and a mini SD Wifi card.  SOMF at ¶ 28, Exhibit F, SPB103, SPB109-123, SPB130-132.  Sergeant Cavanaugh and Officer Rey also obtained a copy of video surveillance from Walmart containing footage of Corradi purchasing a cell phone on March 4, 2015.  SOMF at ¶ 29, Exhibit F, SPB124-25, SPB132.

The record also includes a document entitled "State Parole Board State Warrant," dated April 1, 2015, which is signed by District Parole Supervisor Edward Russo and authorizes Plaintiff's arrest.  *See* Exhibit F, SBP108-09.  The accompanying "Special Report" indicates that Plaintiff was arrested by Officer Rey pursuant to the Parole Warrant and taken to the district office for processing and subsequently transported to Middlesex County Jail.  *See id.*

Based upon the discovery of the items above, Corradi was indicted by a Middlesex County Grand Jury for the crimes of Certain Persons Not to Have Weapons (N.J.S.A. 2C:39-7b), and Violation of Parole Supervision for Life (N.J.S.A. 2C:43-6.4(d)).  SOMF at ¶ 30 Exhibit F, SPB132; Exhibit H, SPB275-276.  On April 1, 2015, Corradi was charged by the Parole Board with numerous violations of PSL, including the following: failure to refrain from possession of an Internet-capable device, failure to refrain from possession of EMT paraphernalia, failure to

refrain from use and possession of alcohol and failure to refrain from possession of a firearm. SOMF at ¶ 31, Exhibit F, SPB102-107; SPB132, SPB137-145.

As noted above, the record contains a document titled "Notice of Probable Cause Hearing," but Plaintiff asserts that 1) he did not agree to postpone the probable cause hearing on the Violation of PSL charges pending the disposition of his criminal charges, and 2) he never received a preliminary or a final parole revocation hearing.  *See* Exhibit A at 19:12-15; 20:9-14. The record contains a May 19, 2017 letter written by Defendant Officer Rey, stating that Corradi requested assignment of counsel and a probable cause hearing for the Violation of PSL charges, and on July 28, 2015, Corradi was assigned attorney Brent M. Davis for pro bono representation. *See* Plaintiff's Exhibit E.  Officer Rey's letter further states that a scheduled Probable Cause Hearing on August 25, 2015 was postponed at the attorney's request pending resolution of the pending criminal charges.  *See id.*  Plaintiff disputes that Mr. Davis conferred with him regarding his case or the probable cause hearing.  *See* Exhibit A at 17:12-19:15.

On July 5, 2017, Plaintiff wrote a letter to the Office of Attorney Ethics complaining that his assigned counsel, Mr. Davis, failed to communicate with him and "made legal decisions on [Plaintiff's] behalf without [Plaintiff's] consent."  *See* Plaintiff's Exhibit F.

On September 15, 2017, the state court held a hearing on a motion to suppress in Plaintiff's criminal case – State of New Jersey v. Louis Corradi, Middlesex County, Indictment# 15-09-1068-I and Indictment # 15-09-1069-I – with respect to the evidence obtained during the April 1, 2015 search of his residence.  *See* ECF No. 90-1, Supp. Exhibit A, Motion to Suppress Transcript.  At the hearing, Judge Rea heard argument from Corradi's appointed Public Defender, Lauren M. Bayer, Esq., and from Middlesex County Assistant Prosecutor Vanessa I. Craveiro, Esq.  *See id.*  Bayer argued that the evidence seized from Corradi's vehicle and home

on April 1, 2015, should be suppressed because Defendants lacked reasonable suspicion to conduct the search. Supp. Exhibit A, Motion to Suppress Tr. 22:6-23:12, 28:5-28:23. Bayer asserted that Defendants conducted the search based solely upon the information that they received from the South Plainfield police related to Juba's report of a person named "Louis" remotely accessing her computer. *Id.* In response, Craveiro argued that defendants had reasonable suspicion to conduct the search, and that they relied upon Plaintiff's criminal and parole history, in addition to the tip provided by Juba to police, in deciding to search Corradi's vehicle and residence. Supp. Exhibit A, Tr. 22:20-24:15, 26:1-27:25. After hearing the arguments, Judge Rea concluded that defendants lacked reasonable suspicion to conduct the search, and granted the motion to suppress the evidence seized on April 1, 2015 from Corradi's vehicle and residence. Supp. Exhibit A, Tr. 29:7-30:1; Exhibit B. 22:10-29:9. Judge Rea explained his reasoning as follows:

> ….[Juba's] tip is not enough. It's just not enough. And that's the problem. Perhaps, you know, more of an investigation would have been warranted to -- to try to link or -- or some type of forensic analysis on Ms. Juba's computer to -- to substantiate a link. But there's just not enough. There's not even – there's not even articulable suspicion, much less probable cause or anything else. It's a hunch. Juba had a hunch and she passed it onto the police and parole and they acted on it. But that's not particularized facts that I think justify that search. It's just not. Even the fact if they saw the police scanner in the car, that doesn't get them into the house to look for Internet-capable devices. It's just not there.

*See* Supp. Exhibit A, Motion to Suppress Tr. 29:10-31:1. The Order entered by Judge Rea dismissed Indictment # 15-09-1069-I and partially dismissed Indictment # 15-09-1068-I.[3] *See id.* at Supp. Exhibit B. On October 11, 2017, the remaining charges were dismissed on the state's application. *See id.* at Supp. Exhibit C.

---

[3] Indictment # 15-09-1068-I survived to the extent it pertained to evidence obtained prior to the April 1, 2015 search. *See id.*

It appears undisputed that Plaintiff was released from jail in October 2017. *See* Exhibit A at 20:15-24. According to Officer Rey's May 19, 2017 letter, Plaintiff was granted release on parole supervision as he had served an amount of time equivalent to what a PSL parole violation would have been. *See* Plaintiff's Exhibit E.

### b. Procedural History

The Complaint in this action was docketed on August 17, 2016. ECF No. 1. The Court proceeded the Complaint in part and dismissed it in part on November 28, 2017. *See* ECF No. 14. The Court proceeded Fourth Amendment claims for illegal search and seizure and false arrest/imprisonment against Defendants in their personal capacities. Following discovery, Defendants filed their first motion for summary judgment on July 26, 2019. ECF No. 71. Plaintiff filed his opposition brief on September 25, 2019. ECF No. 75. Defendants filed their reply brief on October 10, 2019. ECF No. 81. After reviewing the parties' submissions, the Court determined that the record was incomplete, as Defendants had not provided the transcripts from Plaintiff's suppression hearing or addressed whether they were collaterally estopped from asserting that the search did not violated the Fourth Amendment. The Court administratively terminated the motion for summary judgment and directed Defendants to supplement the record. *See* ECF No. 86.

On March 20, 2020, Defendants filed a final corrected supplemental motion for summary judgment that includes the record of the suppression proceeding and provides additional arguments in support of their motion.[4] *See* ECF No. 90. On April 13, 2020, Plaintiff filed his

---

[4] It appears Defendants filed multiple supplemental motions for summary judgment on the same date, and the Court considers the final corrected version and will direct the Clerk of the Court to terminate the other two motions. *See* ECF Nos. 88-89.

opposition to Defendants' supplemental motion for summary judgment.  ECF No. 92.  The matter is now fully briefed and ready for disposition as to the Fourth Amendment claims.

## II.   **STANDARD OF REVIEW**

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 447 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002).

The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment.  *Celotex*, 477 U.S. at 330.  "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." *Gleason v. Norwest Mortg.*, Inc., 243 F.3d 130, 138 (3d Cir. 2001).

The non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005)

(quotations omitted).  Thus, there can be "no genuine issue as to any material fact," if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

A document filed *pro se* is to be "liberally construed" and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  In addition, when considering a motion in a *pro se* plaintiff's proceedings, a court must "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999).  Nevertheless, on a motion for summary judgment, "a *pro se* plaintiff is not relieved of his obligation under Rule 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment." *Ray v. Fed. Ins. Co.*, No. 05-2507, 2007 WL 1377645, at *3 (E.D. Pa. May 10, 2007).  "[M]erely because a non-moving party is proceeding *pro se* does not relieve him of the obligation under Rule 56(e) to produce evidence that raises a genuine issue of material fact." *Boykins v. Lucent Techs., Inc.*, 78 F. Supp.2d 402, 408 (E.D. Pa. 2000).

## III.   ANALYSIS

Defendants argue, in relevant part, that they are entitled to qualified immunity on Plaintiff's Fourth Amendment claims of unlawful search and that his false arrest claim fails because there was probable cause for his arrest.  The Court agrees and will grant summary judgment on these claims.

Notably, Plaintiff asserts in his opposition brief that Sgt. Cavanaugh and Officer Rey violated his due process rights by failing to provide him with a timely parole hearing(s) on the PSL violations.  Because Plaintiff asserts this claim in his Complaint, and Defendants have not sought summary judgment on it, the Court will direct the Magistrate Judge to hold a phone conference to determine whether there is any outstanding discovery and to set a schedule for dispositive motions with respect to this claim.

### a.  Defendants are Entitled to Qualified Immunity on Plaintiff's Fourth Amendment Search and Seizure Claims.

Defendants argue that they are entitled to qualified immunity on the Fourth Amendment illegal search claims.  The doctrine of qualified immunity shields officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Williams v. City of York, Pennsylvania*, 967 F.3d 252, 258–59 (3d Cir. 2020) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "To resolve a claim of qualified immunity, [courts] engage in a two-pronged inquiry: (1) whether the plaintiff sufficiently alleged the violation of a constitutional right, and (2) whether the right was clearly established at the time of the official's conduct." *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 241 (3d Cir. 2016) (internal quotation marks omitted).  Courts are permitted to exercise discretion in deciding which of the two prongs of the qualified-immunity analysis should be addressed first in light of the circumstances of the particular case. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *see also Bruton v. Paesani*, 162 F. App'x. 151, 153 (3d Cir. 2006) (finding that the court need not address whether entry and search of Plaintiff's home violated the Fourth Amendment because the Defendant parole officers were entitled to qualified immunity on such claims).  As such, a court performs this inquiry "in the order [it] deem[s] most appropriate for the

particular case before [it]." *Santini v. Fuentes*, 795 F.3d 410, 418 (3d Cir. 2015) (citing *Pearson*, 555 U.S. at 236 (2009)).

Defendants assert that they are entitled to qualified immunity because the Fourth Amendment rights asserted by Plaintiff are not clearly established. "[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, ⸻ U.S. ⸻, 138 S. Ct. 577, 589 (2018) (citation omitted). To be "clearly established," the law must be "sufficiently clear that every reasonable official would understand what [s]he is doing is unlawful." *Id.* (internal quotation marks and citation omitted); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (although "a case directly on point" is not required, "existing precedent must have placed the statutory or constitutional question beyond debate"). "[P]recedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* at 590. "It is not enough that the rule is suggested by then-existent precedent." *Id.* The "clearly established" standard, therefore, requires that a particular rule's contours be well defined at a "high 'degree of specificity.'" *Wesby*, 138 S. Ct. at 590 (citation omitted); *see also Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012).

Clearly established law is "dictated by controlling authority or a robust consensus of cases of persuasive authority." *Id.* at 589–90 (internal quotation marks and citation omitted); *see also Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 722 (3d Cir. 2018) (concluding that a single circuit's decision did not "amount[ ] to the robust consensus of cases of persuasive authority in the Court of Appeals that we have held necessary to clearly establish a right in the absence of controlling precedent" (internal quotation marks and citation omitted)).

In addition, to determine whether a right is clearly established, courts must examine the official's "particular conduct" *id.* at 742, in "the specific context of the case." *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (overturned on other grounds).  The Supreme Court has explained that this specificity is "especially important" in the Fourth Amendment context, where it is sometimes difficult for an officer to determine how relevant legal doctrines will apply to the factual situation before him or her.  *Mullenix v. Luna*, 577 U.S. 7,  12 (2015).  The appropriate inquiry is whether the Constitution prohibited the officer's conduct in the situation the officer confronted.  *Id.* (citing *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).  As explained by the Supreme Court in *Mullenix*,

> *Anderson v. Creighton*, 483 U.S. 635 [ ] (1987), is also instructive on the required degree of specificity. There, the lower court had denied qualified immunity based on the clearly established "right to be free from warrantless searches of one's home unless the searching officers have probable cause and there are exigent circumstances." *Id.*, at 640 [ ]. This Court faulted that formulation for failing to address the actual question at issue: whether "the circumstances with which Anderson was confronted ... constitute[d] probable cause and exigent circumstances." *Id.*, at 640–641 [ ]. Without answering that question, the Court explained, the conclusion that Anderson's search was objectively unreasonable did not "follow immediately" from—and thus was not clearly established by—the principle that warrantless searches not supported by probable cause and exigent circumstances violate the Fourth Amendment. *Id.*, at 641 [ ].

577 U.S. at 13.

Ultimately, qualified immunity "gives ample room for mistaken judgments" by shielding "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986); *see al-Kidd*, 563 U.S. at 743 (Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.").  This accommodation recognizes our societal interest in law enforcement's pursuit

of investigations unconstrained by the constant fear of being sued. *See Hunter v. Bryant*, 502 U.S. 224, 229 (1991).

Construed liberally, Plaintiff asserts in his Opposition Brief that Defendants are not entitled to qualified immunity because it should have been clear to them that they had neither probable cause nor reasonable suspicion to search his home (and vehicle) based on the tip from Juba. From the outset, Plaintiff's arguments fail to take into account his status as a parolee, which significantly diminishes his Fourth Amendment rights. The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," U.S. Const. amend. IV, and "this usually requires the police to have probable cause or a warrant before making an arrest." *Herring v. United States*, 555 U.S. 135, 136 (2009). While a warrantless home search is presumptively unreasonable, *see Payton v. New York*, 445 U.S. 573, 586 (1980), the Supreme Court has recognized exceptions to this rule for probationers, which apply equally to parolees. *See United States v. Baker*, 221 F.3d 438, 444 (3d Cir. 2000) (justification applies with perhaps even greater force to parolees given judgment that parolee needed incarceration).

Parole allows an individual to complete the final portion of a sentence outside of prison but subject to specified conditions. *See State v. Black*, 153 N.J. 438, 447 (1998). A parolee does not enjoy the same freedoms as an ordinary citizen, but rather has conditional liberty subject to the observance of various parole requirements. *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972).

In *Griffin v. Wisconsin*, 483 U.S. 868 (1987), the United States Supreme Court upheld a search of a probationer conducted pursuant to a Wisconsin regulation permitting "any probation officer to search a probationer's home without a warrant as long as his supervisor approves and as long as there are 'reasonable grounds' to believe the presence of contraband." 483 U.S., at

870-87.  The Wisconsin regulation that authorized the search was not an express condition of Griffin's and applied to all Wisconsin probationers, with no need for a judge to make an individualized determination that the probationer's conviction justified the need for warrantless searches. The Court nevertheless held that a State's operation of its probation system presented a "special need" for the "exercise of supervision to assure that [probation] restrictions are in fact observed." *Id.* at 875.  That special need for supervision justified the Wisconsin regulation and the search pursuant to the regulation was thus reasonable.  *Id.* at 875-880.

Subsequently, in *United States v. Knights*, 534 U.S. 112 (2001), the United States Supreme Court ruled that the police can search a probationer's residence when the probationer is subject to a search provision, and the police have a reasonable suspicion that the probationer is engaging in illegal activity.  *Knights*, 534 U.S. at 121.  In *Knights*, the individual's probation order contained a search provision that allowed law-enforcement officers to search his "person, property, place of residence, vehicle, or personal effects" in the absence of a search warrant, arrest warrant, or reasonable cause.  *Id.* at 114.  The Court held that the search was reasonable under the "totality of the circumstances." *Id.* at 118.  But it did not invoke the "special needs" exception discussed in *Griffin*.  Rather, the Court explained that the probationer had a reduced expectation of privacy and that the government had a strong interest in monitoring probationers. *Id.* at 121.  Because the police had a reasonable suspicion that the probationer was engaging in illegal activity and the probationer was subject to a search provision, the search was deemed constitutional.  *Id.*

Finally in *Sampson v. California*, 547 U.S. 843, 846-47 (2006), the Supreme Court held that a California police officer's suspicionless search of a parolee did not violate the Fourth Amendment.  The Court employed a multi-factor test, which included as a factor the broad

16

consent to search required of California parolees as a condition of parole.[5]  *Id.* at 852.  *But see State v. O'Hagen*, 189 N.J. 140, 158 (2007) ("The more stringent special needs analysis provides an appropriate framework for evaluating defendant's New Jersey state constitutional claims[]" regarding suspicionless searches); *Brennan v. Dawson*, 752 F. App'x. 276, 284 (6th Cir. 2018) (plaintiff not subject to warrantless searches of his home because his probation in Michigan contained no such condition).

Article I, Paragraph 7 of the New Jersey Constitution also protects citizens against unreasonable searches and seizures.  *See O'Hagen*, 189 N.J. at 149.  As relevant here, the New Jersey Supreme Court has held that "it is constitutionally permissible to subject parolees to 'conditions [that] restrict their activities substantially beyond the ordinary restrictions imposed by law on an individual citizen.'"  *J.B. v. State Parole Bd.*, 229 N.J. 21, 40 (2017) (alteration in original) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 478 (1972)).  Similar to the Wisconsin statute at issue in *Griffin*, the New Jersey Administrative Code authorizes searches of a parolee's residence with a supervisor's approval where parole officers have "a reasonable articulable suspicion to believe that evidence of a violation of a condition of parole would be found in the residence or contraband which includes any item that the parolee cannot possess under the conditions of parole is located in the residence."  N.J.A.C. 10A:72-6.3;[6] *State v. Maples*, 346 N.J. Super. 408, 413-16 (App. Div. 2002).

---

[5] Unlike New Jersey's regulations, described below, the California parolees' consent form advises that the parolee "is subject to search ... at any time of the day or night, with or without a search warrant or with or without cause." Cal. Penal Code § 3067(b)(3).) The New Jersey Constitution, requires that suspicionless searches be evaluated under a "special needs" test rather than a general balancing test. *See State v. O'Hagen*, 189 N.J. at 157-58.  Because Plaintiff does not challenge a suspicionless search condition, *Sampson* is of limited applicability here.

[6] This regulation (formerly N.J.A.C. 10A:26-6.3(a)) authorizes searches of parolees as follows:

Under New Jersey law, "'reasonable suspicion' requires specific and articulable facts sufficient to justify a belief that the conditions of parole have been violated." *Maples*, 346 N.J.

---

(a) A parole officer may conduct a search of a parolee's residence when:

1. There is a reasonable articulable suspicion to believe that evidence of a violation of a condition of parole would be found in the residence or contraband which includes any item that the parolee cannot possess under the conditions of parole is located in the residence; and

2. An Assistant District Parole Supervisor or a higher level supervisor provides prior approval for the search or circumstances exist which require immediate action without prior approval from a supervisor.

(b) Where the residence is jointly owned or shared by a parolee and another person(s), the parole officer:

1. May search all objects that appear to be owned or possessed by the parolee;

2. May search any area of the residence or objects that are jointly shared by both the parolee and the other person, even if such other person(s) objects to the search; and

3. May not search any area that is exclusively under the control of the other person(s) unless that person(s) provides written voluntary consent to the search.

(c) A parole officer shall not enter the home of a third party to search for a parolee without having a search warrant unless:

1. The parole officer has an objectively reasonable basis to believe that the parolee named in the parole warrant resides in the home of the third party and is in the home of the third party at that time; or

2. The parole officer obtains written voluntary consent from an adult resident.

10A:72–6.3 Search of a parolee's residence; when authorized, NJ ADC 10A:72-6.3

Super. at 414.  The New Jersey Appellate Division has applied the "special needs" exception recognized in *Griffin* to a search of a parolee's home conducted by parole officers acting in accordance with state law.  *See id.* at 408.  Moreover, the New Jersey Constitution does not require any greater limitation upon a parole officer's right to search, and any greater protection to a parolee, than the protections announced in *Griffin*.  *See id.* at 416 ("[W]e find no reason to conclude that  the New Jersey Constitution requires any greater limitation upon a parole officer's right to search, and any greater protection to a parolee, than does federal law as enunciated in *Griffin v. Wisconsin* and *United States v. Hill* [, 967 F.2d 902 (3d Cir. 1992)].)

Under federal law, an analysis of reasonable suspicion considers, under the totality of the circumstances, whether an official "has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002); *Keating v. Pittston City*, 643 F. App'x 219, 223–24 (3d Cir. 2016); *United States v. Wormsley*, 708 F. App'x 72, 74–75 (3d Cir. 2017).  Reasonable suspicion is defined as a "commonsense, nontechnical" concept that deals with "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Ornelas v. United States*, 517 U.S. 690, 695 (1996) (internal quotation marks omitted).  The standard for reasonable suspicion is less demanding than the standard for probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.  *See Alabama v. White*, 496 U.S. 325, 330 (1990).  Under Third Circuit law, reasonable suspicion also suffices to justify a parole agent's warrantless search of premises that parolees are on or have control of, including a parolee's residence, when an agent reasonably believes that the premises contain evidence of a parole

violation.  *See United States v. Baker*, 221 F.3d 438, 443–44 (3d Cir. 2000); *United States v. Hill*, 967 F.2d 902, 908–09 (3d Cir. 1992).

In opposing summary judgment, Plaintiff argues that the warrantless search of his home violated the Fourth Amendment because the officers had neither a warrant nor probable cause.  A warrant based on probable cause is not needed to conduct a search of a parolee's home.  *See Griffin*, 483 U.S. at 873–74.  Under New Jersey law, a parole officer can search a parolee's residence when the officer has a reasonable suspicion that a condition of parole has been violated so long as it is authorized by a supervisor or there are exigent circumstances.  *See Maples*, 346 N.J. Super. at 412–13.  Here, it is undisputed that Plaintiff is a parolee who resided at the residence where the search was conducted and that the search was authorized by Sgt. Cavanaugh, as required by the New Jersey regulation.  As such, reasonable suspicion is the relevant standard, and no warrant was required for the search.

As Plaintiff asserts, however, the state court judge presiding over Plaintiff's criminal case determined that the officers did not have reasonable suspicion to conduct the search of Plaintiff's residence and vehicle because Juba's statements to police on which Defendants relied, were insufficient without corroboration or further investigation.  Even assuming that Sgt. Cavanaugh and Officer Rey violated the Fourth Amendment or the New Jersey Constitution by entering and searching Plaintiff's residence and vehicle, there are no sufficiently analogous cases under either federal or state law that would have notified Defendants that their conduct was patently unconstitutional.  *See Bruton v. Paesani*, 162 F. App'x. 151, 153–54 (3d Cir. 2006) (citing *Saucier*, 533 U.S. at 202–03 and holding that parole officers were entitled to qualified immunity on Plaintiff's Fourth Amendment claims).  The failure to accurately determine what the law requires does not void qualified immunity unless the determination was clearly unreasonable.

*See Saucier*, 533 U.S. at 205.  As explained below, even if Defendants wrongly relied on Juba's statements, which were provided by law enforcement, their calculation was not unreasonable in light of existing precedent.  Thus, Defendants' conduct, even if mistaken, was not clearly unlawful, and they are entitled to qualified immunity.

Indeed, the United States Supreme Court in *Griffin* approved the search of a probationer's residence with less indicia of reliability than the circumstances presented here.  There, the Supreme Court found "reasonable grounds" for a probation search when a detective called a probation supervisor and stated "there were or might be guns" in the probationer's home.  *See* 483 U.S. at 871. There was nothing further to support a search—just an "unverified tip from an unknown source" to a detective, which was then relayed to probation.  *Id.* at 887 (Blackmun, Jr., dissenting).  During the subsequent search of Griffin's residence—carried out by the probation officers under the authority of Wisconsin's probation regulation—they found a handgun.  The Supreme Court determined that the search of Griffin's home "satisfied the demands of the Fourth Amendment because it was carried out pursuant to a regulation that itself satisfies the Fourth Amendment's reasonableness requirement under well-established principles."  *See id.* at 873. The Supreme Court further explained

> we think it reasonable to permit information provided by a police officer, whether or not on the basis of firsthand knowledge, to support a probationer search.... [P]olice may be unwilling to disclose their confidential sources to probation personnel. For the same reason, and also because it is the very assumption of the institution of probation that the probationer is in need of rehabilitation and is more likely than the ordinary citizen to violate the law, we think it enough if the information provided indicates, as it did here, only the likelihood ("had or might have guns") of facts justifying the search.

*Id.* at 879–80.

Plaintiff contends that Juba's allegations that he may have remotely accessed her computer in March 2015 were uncorroborated and unreliable given that she had no computer expertise, and he had worked on Juba's family member's computer approximately a decade prior to the incident in question.  Generally, tips, and anonymous tips in particular, must be corroborated and bear "sufficient indicia of reliability" to support reasonable suspicion.  *See, e.g.*, *Florida v. J.L.*, 529 U.S. 266, 270 (2000).  The Supreme Court in *Griffin*, however, suggests that less reliable information will support reasonable suspicion in the probation or parole context. As the Court explained,

> it is both unrealistic and destructive of the whole object of the continuing [ ] relationship to insist upon the same degree of demonstrable reliability of particular items of supporting data, and upon the same degree of certainty of violation, as is required in other contexts. In some cases—especially those involving drugs or illegal weapons—the [ ] agency must be able to act based upon a lesser degree of certainty than the Fourth Amendment would otherwise require in order to intervene before [the individual] does damage to himself or society. The agency, moreover, must be able to proceed on the basis of its entire experience with the probationer, and to assess probabilities in the light of its knowledge of his life, character, and circumstances.

*Griffin*, 483 U.S. at 879 (footnotes omitted).  Thus, as the Third Circuit recently stated in *United States v. Henley*, 941 F.3d 646, 654 (3d Cir. 2019), "*Griffin* endorses the adequacy of generalized information from an unknown source of evidence of a crime in a parole/probation context."  *Id.*

The Court also finds the Tenth Circuit's decision in *Leatherwood v. Welker*, 757 F.3d 1115, 1121-22 (10th Cir. 2014), instructive.  There, the Tenth Circuit reversed the district court's denial of qualified immunity arising from the defendant parole officer's reliance on a tip from the parolee's ex-wife and anonymous emails regarding alleged parole violations by Plaintiff. Relying on *Griffin*, the appellate court first determined that "probation searches may be premised

22

on less reliable information than that required in other contexts" and held that the parole officer defendant had reasonable suspicion to conduct a parole search based on the information from the ex-wife and anonymous emails.  *See id.*  The Tenth Circuit further held that "[e]ven if we were to find that Mr. Leatherwood had shown a violation of his rights sufficient to satisfy the first qualified immunity prong, he would fail on the 'clearly established' prong."  *Id.* at 1121 (citing *Pearson*, 555 U.S. at 243–44).  The court noted the "substantial body" of Tenth Circuit and Supreme Court case law approving probation searches premised on uncorroborated and anonymous tips, and explaining that would not have been "clear to a reasonable officer in the agents' position that their conduct was unlawful in the situation they confronted." *Id.*

The Third Circuit and other circuit courts have likewise held that parole officers are entitled to qualified immunity on unreasonable search claims in the parole context.  *See Bruton*, 162 F. App'x. at 154 (Parole officers' conduct in entering and searching parolee's residence "was not clearly unlawful, and thus, they are entitled to qualified immunity."); *Lane v. Nading*, 927 F.3d 1018, 1024 (8th Cir. 2019) (officers entitled to qualified immunity for failing to knock and announce prior to entering parolee's residence because law was unclear regarding whether knock and announce rule applied to parolees); *Black v. Petitinato*, 761 F. App'x. 18, 21 (2019) ("We therefore conclude that there was no clearly settled law telling the parole officers that their search of Black's residence violated the standards of the Fourth Amendment.").

Plaintiff has not pointed to any controlling state or federal court decision in the parolee context that would have placed Defendants on notice that they could not rely on Juba's statements together with Plaintiff's criminal and parole history to find reasonable suspicion to search Plaintiff's vehicle and residence.  In light of *Griffin*, which approved a search of parolee based on uncorroborated, anonymous information relayed from police, it would not have been

clear to Sgt. Cavanaugh or Officer Rey that the decision to search Plaintiff's home and vehicle was unlawful because they failed to corroborate Juba's statements relayed to police prior to conducting the search.  This is particularly true because the totality of the circumstances here included the fact that Plaintiff was a computer expert who had previously worked on Juba's family member's computer, that he had violated parole by utilizing internet-capable devices, and that he had a federal conviction for possessing child pornography on his work and home computer.  Further, child pornography and/or child sex abuse, like crimes involving drugs and guns, arguably require parole officers to act with "a lesser degree of certainty than the Fourth Amendment would otherwise require in order to intervene before [the individual] does damage to himself or society."  *See Griffin*, 483 U.S. at 879 (footnotes omitted).  Thus, Defendants' searches of Plaintiff's residence and vehicle  were not unreasonable under the circumstances and relevant precedent, and they are entitled to qualified immunity on the unlawful search claims.

Because Defendants are entitled to qualified immunity on Plaintiff's Fourth Amendment search claims, the Court will grant the motion for summary judgment as to those claims.

### b. Defendants are Also Entitled to Summary Judgment on Plaintiff's False Arrest/False Imprisonment Claim

Defendants are also entitled to summary judgment on the false arrest and/or false imprisonment claim.  To make out either a false arrest or false imprisonment claim, Plaintiff needed to demonstrate that his arrest was unsupported by probable cause.[7]  *See Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995) (proving false arrest requires a showing of an absence of probable cause); *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995)

---

[7] The Court assumes without deciding that probable cause and not a lesser standard is required to arrest a parolee for parole violations.  *See United States v. Noble*, 326 F. App'x. 125, 127 (3d Cir. 2009) (noting that "it is unclear whether a parole officer must have probable cause to arrest a parolee for parole violations, or whether a less demanding standard applies").

(citing *Baker v. McCollan*, 443 U.S. 137, 143–44 (1979)) ("[A]n arrest based on probable cause [cannot] become the source of a claim for false imprisonment.").  "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti*, 71 F.3d at 483.  It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."  *Wesby*, 138 S.Ct. at 586 (quoting *Illinois v. Gates*, 462 U.S. 213, 243-44 n.13 (1983)); *see also Maryland v. Pringle*, 540 U.S. 366, 371-72 (2003) (holding that police officers had probable cause to arrest all three occupants of a vehicle where cocaine was accessible to all three).

Defendants need only show that there was probable cause as to one of the charges brought against Corradi in order to defeat the wrongful arrest claim. The search of Corradi's residence uncovered a .22-caliber rifle, a recycling can full of beer cans, EMT clothing, an LG Smartphone package and a Walmart receipt, dated March 4, 2015, for an LG smartphone, and a mini SD Wifi card.  Under his PSL conditions, Corradi was prohibited from using alcohol and from possessing a gun, internet-capable devices and EMT clothing.  Thus, the record demonstrates that Defendants had probable cause for these charges and violations, and the Court will grant summary judgment on Plaintiff's false arrest and false imprisonment claims.[8]

### c.  Remaining Due Process Claim

---

[8] Although the evidence was suppressed by the state court in his criminal proceeding, Plaintiff may not invoke the exclusionary rule in this civil proceeding. *See Cox v. Pate*, 283 F. App'x. 37, 40 (3d 2008) (citing *United States v. Calandra*, 414 U.S. 338, 348 (1974) (instructing that "standing to invoke the exclusionary rule has been confined to situations where the Government seeks to use such evidence to incriminate the victim of the unlawful search"); *see also Hector v. Watt*, 235 F.3d 154, 158 (3d Cir. 2001).  Thus, Plaintiff is not permitted to argue that the evidence seized from his residence should be excluded from the Court's probable cause analysis.

Defendants have not moved for summary judgment on Plaintiff's claim that Defendants denied him due process by failing to provide him with a hearing(s) on his parole revocation.  As Defendants point out, the Court did not construe this claim in its initial screening opinion, but the claim is nevertheless asserted in Plaintiff's Complaint.  In order to ensure that parolees receive procedural due process, the New Jersey State Parole Board has created rules regarding preliminary and final revocation hearings.  *See County of Hudson v. Dept. of Corr.*, 152 N.J. 60, 70 (1997).  Due process in this context generally requires a prompt preliminary hearing to determine whether there is probable cause or reasonable grounds to believe that the parolee has committed acts which would constitute a violation of parole conditions, and also requires a hearing prior to a final decision to revoke parole.  *See id.* (citing *Morrissey v. Brewer*, 408 U.S. 471, 485-88 (1972)); *see also Johnson v. State Parole Bd.*, 131 N.J. Super. 513, 521 (App. Div. 1974) (due process requires prompt hearings for probable cause and final revocation of parole). The regulations further require that "the parole officer, District Parole Supervisor or the designated representative of the Commission, as appropriate, to give written notice to the parolee of the time, date and place of the preliminary hearing at least three days prior to the preliminary hearing unless the parolee waives such notice.  *See* N.J.A.C. 10A:71–7.7.  It is not clear whether Plaintiff received this notice, and the parties appear to dispute whether Plaintiff agreed to postpone or waive the preliminary hearing, or whether his attorney waived it on his behalf, and the Court is unable to resolve these issues without the full record and appropriate briefing.

To resolve these issues, the Magistrate Judge shall initiate a phone conference with the parties to determine whether any additional discovery is needed on Plaintiff's remaining due process claim and to set a schedule for dispositive motions on this claim only.

IV.    **CONCLUSION**

The Court will grant summary judgment to Defendants on the basis of qualified immunity as to Plaintiff's Fourth Amendment search claims.  The Court will also grant summary judgment on the remaining Fourth Amendment false arrest and/or false imprisonment claims. The Magistrate Judge shall initiate a phone conference with the parties to determine whether any additional discovery is needed on Plaintiff's remaining due process claim and set a schedule for dispositive motions on this claim only.  The Court will administratively terminate this matter for docket management purposes pending the filing of dispositive motions.  An appropriate Order follows.

_____
Freda L. Wolfson
U.S. Chief District Judge

DATED:  October 28 , 2020